.            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF ALABAMA
                    NORTHERN DIVISION

LAWRENCE WELLS,                    )
                                   )
         Plaintiff,                )
                                   )
v.                                 )    CIVIL ACT. NO.  2:13-CV-516-MEF
                                   )              (WO)
GOURMET SERVICES, INC., *et al*.,  )
                                   )
         Defendants.               )

### ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is the Defendants' motion for judgment on the pleadings. (Doc. 37).

On April 30, 2014, this court held a hearing for the purpose of determining the legal and

factual basis of the claims set forth in Plaintiff Lawrence Wells's amended complaint.  (Doc.

47).  Wells alleges that he was subjected to a racially-hostile work environment, deprived of

pay on the basis of race, and discharged in retaliation for filing a complaint of race

discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e, *et seq.* ("Title VII").   In addition, Wells alleges that he was subjected to

unlawful retaliation in violation of Title VII when Gourmet Services, Inc., failed to provide

his prospective employers with positive references and other requested information.[1] Wells

also alleges that he was deprived of overtime compensation in violation of the Fair Labor

Standards Act of 1938, as amended ("FLSA"), 29 U.S.C.A. § 201 *et seq.*  Wells also asserts

state law claims of promissory fraud, breach of contract, and slander.  Further, at the April

─────────────

[1]*See* Doc. 61.

30, 2014, hearing, Wells attempted to renew a claim that he was subjected to discrimination in violation of Title VII because he is from New York City, which the court construes as a motion to amend the amended complaint to reassert a claim for discrimination on the basis of national origin in violation of Title VII.  Having considered the amended complaint and the Plaintiff's statements at the April 30, 2014 hearing, the court (1) grants the motion to amend the amended complaint and (2) concludes that Wells's Title VII and state law claims are due to be dismissed, and that this case should proceed only on Wells's FLSA claim.

## I.      Standard of Review

## A.      Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). This court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,'and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Therefore, a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* "at the earliest possible stage in the proceedings." *Id*. at 410.  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action." Fed. R. Civ. P. 12(h)(3).

**B.     Judgment on the Pleadings and Failure to State a Claim Upon Which Relief Can be Granted**

"Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

Further, when, as here, a litigant is allowed to proceed *in forma pauperis* in this court, the court will screen the litigant's complaint in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).  Section  1915(e)(2)  requires a district court to dismiss the complaint of a party proceeding *in forma pauperis* "at any time" if court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

The same standard that governs a dismissal under Federal Rule of Civil Procedure 12(b)(6) governs both the evaluation of a complaint for failure to state a claim upon which relief can be granted under 28 U.S.C. §1915(e)(2)(B)(ii) and the resolution of a motion for judgment on the pleadings which does not require consideration of matters outside the pleadings.  *Losey v. Warden*, 521 Fed. Appx. 717, 719 (11th Cir. 2013) (applying the same standard of review to a motion to dismiss for failure to state a claim and a motion for

3

judgment on the pleadings); *Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008) (applying the standard governing dismissal under Rule 12(b)(6) to review of a *pro se* complaint under 28 U.S.C. § 1915(e)(2)(B)(ii)).   Under this standard, although the court must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S, at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

In *Iqbal, the* Supreme Court reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id*. at 679. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 556 U.S. at 570.

When evaluating the sufficiency of a complaint, a plaintiff's *pro se* status must be considered alongside the pleading requirements of *Twombly* and *Iqbal. See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (applying *Twombly* to a *pro se* complaint while recognizing the leniency that must be afforded to a *pro se* litigant who does not have the benefit of a legal education); *see also Douglas*, 535 F.3d at 1320-22 (reviewing the dismissal of a complaint under § 1915(e)(2)(B)(ii) while applying both *Twombly* and the rule that a *pro se* complaint is to be construed with leniency). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94

(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  *Cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").  However, the leniency shown to *pro se* litigants "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998), overruled on other grounds by *Iqbal*, 550 U.S. 662 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Pontier v. City of Clearwater*, 881 F. Supp. 1565, 1568 (M.D. Fla. 1995)).  "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.*, 399 Fed. Appx. 563, 565 (11th Cir. 2010) (unpublished) (citations omitted).

## II.   Facts and Procedural History

On July 19, 2013, Lawrence Wells filed an 816-page *pro se* complaint alleging that he was subjected to a hostile work environment, wrongfully discharged, and deprived of pay by the Defendants: his former employer, Gourmet Services, Inc., and its alleged agents, Al Baker, Gil Jones, Tia Benton, Charles Jones, and Jasper Manuel. Wells alleged that the hostile work environment, discharge, and deprivation of pay were the result of discrimination on the basis of race, national origin, and because he is "an outsider from New York City," in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"). (Doc. 1 pp. 1-2). In addition, Wells asserted state law claims of fraud and breach of contract. (Doc. 1 p. 4).

On February 13, 2014, the Defendants filed a motion for judgment on the pleadings (Doc. 37).  Upon consideration of the motion, the magistrate judge recommended that Wells's national origin discrimination claims be dismissed. (Doc. 39 p. 12. ¶¶ 3-4).  Further, the magistrate judge recommended that the motion for judgment on the pleadings (Doc. 37) be granted as to Wells's Title VII claim that he was subjected to a hostile work environment, wrongful discharge, and deprivation of pay on the basis of race, and that those claims be dismissed with prejudice unless, on or before March 26, 2014, Wells filed an amended complaint "that contains a *short and plain statement* setting forth specific factual allegations from which it could be reasonably inferred that his employer discriminated against him on the basis of his race."  (Doc. 39 p. 12 ¶ 2 (emphasis added)).  Finally, the magistrate judge recommended that Wells's state law claims be dismissed for lack of jurisdiction unless Wells complied with the court's order to file amended complaint stating a Title VII claim.

On March 20, 2014, supplemented by an additional filing on March 28, 2014, Wells filed 203 pages of documents purporting to comprise an amended complaint.  (Docs. 47, 49). Upon scrutinizing the numerous documents filed by Wells, the court determined that Wells's 203-page filing consists of a 38-page amended complaint setting forth Wells's claims (Doc. 47) and a three-page brief containing various legal citations (Doc. 47-1), with the remaining pages consisting of exhibits; therefore, the court instructed the Clerk to docket the amended complaint and attachments accordingly.  While substantially shorter than the original complaint, Wells's amended complaint is neither short nor plain and, therefore, does not

comply with the court's directive to file a short, plain statement in compliance with Rule 8(a)(2) of the Federal Rules of Civil Procedure. (Doc. 39 p. 12 ¶ 2). Therefore, the court set this case for a hearing on April 30, 2014, for the purpose of determining the legal and factual grounds for the claims in Wells's amended complaint. At the hearing, the Defendants renewed their motion for judgment on the pleadings with respect to Wells's amended complaint. (Doc. 60 pp. 24-29 ).

Having carefully considered Wells's amended complaint with its numerous attachments and Wells's statements at the April 30, 2014, hearing, the court concludes that Wells has attempted to state the following claims in his amended complaint:

1.  a claim that Wells was subjected to a hostile work environment and deprivation of pay on the basis of race, in violation of Title VII;

2.  a claim that, in violation of Title VII, Wells was discharged in retaliation for filing a complaint of race discrimination before the EEOC;

3.  a claim that Wells was not paid overtime wages in violation of the FLSA;

4.  state law claims of promissory fraud, breach of contract, and slander.

(Docs. 47 & 49).

In addition, at the April 30, 2014 hearing, Wells attempted to renew his claim that he was subjected to discrimination on the basis of his national origin.

Further, on July 14, 2014, Wells filed a document which the court construed as a motion to amend his amended complaint to include an additional claim that he was subjected

to unlawful retaliation in violation of Title VII when Gourmet Services, Inc., failed to provide his prospective employers with positive references and other requested information. (Doc. 61).  The court has granted that motion to amend. (Doc. 63).

## III.   Discussion

## A.   Title VII: National Origin Discrimination

In his original complaint, Wells contended that he was subjected to a hostile work environment, wrongful discharge, and deprivation of pay in violation of Title VII on the basis of national origin specifically because he is "an outsider from New York City" and is not a native of the South.  (Doc. 1 pp. 1-2).  Wells did not raise his national origin discrimination claim in his March 20, 2014, amended complaint, which supersedes his amended complaint. *See Riley v. Fairbanks Capital Corp.*, 222 Fed. Appx. 897, 888 (11th Cir. 2007).  However, at the April 30, 2014 hearing, Wells argued that he was subjected to discrimination because he was "not from Montgomery" and because he was not a native of the South.  (Doc. 60 p. 12).  In the interest of affording Wells a full and complete opportunity to present his Title VII national-origin discrimination claim, the court construes Wells's arguments at the April 30, 2014 hearing as a motion to amend his amended complaint to include that claim, and the court concludes that the motion to amend is due to be granted.  *See* Fed. R. Civ. P. 12(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

However, Title VII prohibits discrimination on the basis of *national* origin, not city or state of origin.  *See Espinoza v. Farah Mfg. Co., Inc.*,  414 U.S. 86, 88 (1973) ("The term

'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."). Title VII does not prohibit discrimination in the workplace on the basis of some factor other than "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244-45 (11th Cir. 1999). Thus, being "an outsider from New York City," as opposed to being a native of Alabama or the American South, does not, in and of itself, give rise to a Title VII claim for discrimination on the basis of national origin. Wells has not made any factual allegation from which it may reasonably be inferred that he was subjected to discrimination on the basis of his or his ancestors' country of origin. Accordingly, the complaint does not state a claim for discrimination on the basis of national origin. *Espinoza*, 414 U.S. at 88 (holding that "national origin" refers to the country of origin of the plaintiff or his ancestors).

The court finds that providing Wells another opportunity to amend his national-origin discrimination claim would be futile because, as a matter of law, being a native of New York City cannot form the basis for such a claim. Therefore, Wells is not entitled to an opportunity to amend his complaint before the claim is dismissed with prejudice. *See Bettencourt v. Owens*, __ Fed. Appx. __, 2013 WL 5450978, 4 (11th Cir. Oct. 2, 2013) ("A court must . . . afford a plaintiff an opportunity to amend his *pro se* complaint before dismissing with prejudice unless an amendment would be futile." (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). Thus, Wells's Title VII claim for discrimination on the

basis of national origin is due to be dismissed with prejudice.

**B.     Title VII: Hostile Work Environment.**

Title VII prohibits discrimination against individuals with respect to the "terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).  To establish a Title VII hostile-work-environment claim on the basis of race, the plaintiff must prove: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his race; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for the discriminatorily abusive working environment under a theory of either vicarious or direct liability.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Wells alleges that, in April, 2011, when he first reported to work as an executive chef at Gourmet Services's food service operations at Alabama State University, he was told that "when [he] came to work pa[st] the front gate[, he] was entering Pecan Plantation [which was what] Alabama State University used to be.  And that the Master was still running the

11

House Niggers, and [Wells] was just one Field Nigger so get used to it." (Doc. 47 pp. 4, 8-9).

Michael Mosely, the person who made this statement to Wells, was not Wells's supervisor,

but was one of the other African-American chefs in the kitchen.  (Doc. 60 p. 3).  Wells does

not allege that Mosely discriminated against him by making this statement;[2] rather, the

statement represents Mosely's personal opinion regarding the workplace.  Mosely did not

relate any specific incidents of discrimination upon which he based his opinion of the

workplace.  Therefore, Mosely's opinion cannot support a claim that Wells was subjected to

a hostile work environment.  *See Adams v. Austal*, __ F.3d __, 2014 WL 2726171 (11th Cir.

June 17, 2014) (holding that, while courts must examine the totality of the workplace

circumstances to determine whether harassment was sufficiently severe or pervasive to alter

the terms and conditions of employment, "[t]he totality of a plaintiff's workplace

circumstances does not include other employees' experiences of which the plaintiff is

unaware" or of which the employee learned only after his employment ended).

Wells alleges that, on December 12, 2011, when "it was busy" in the kitchen due to

the winter holiday season, Wells calmly and politely requested a pastry bag from Mr. Botts,

---

[2]However, even if personal racial animus could be attributed to Mosely by virtue of his use of the term "nigger," Wells does not allege that his employer was or should have been aware of his co-worker's statement; thus, there is no basis for concluding that Well's employer could be liable for any discrimination or harassment caused by the statement itself.  *See*  42 U.S.C. § 2000e-2 (making it unlawful for "an employer" to discriminate on the basis of race); *Miller*, 277 F.3d at 1278 ("Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct."). *Cf. Evans v. McClain of Georgia*, *Inc*., 131 F.3d 957, 962 (11th Cir. 1997) (holding that, because a certain coworker was not a decisionmaker with respect to the employer's allegedly-discriminatory decisions, the coworker's racially-discriminatory remarks did not provide direct evidence that the employer discriminated on the basis of race).

a fellow African-American chef who was not Wells's supervisor.  (Doc. 47 p. 21; Doc. 60 pp. 4-6, 10; Doc. 1-2 p. 44).  Botts attempted to make a pastry bag for Wells out of baking paper, but Wells told Botts "that would not work for me. That I could not work like this!" (Doc. 1-2 p. 44).  Botts responded that he was trying to help Wells, and then proceeded to elaborate on this point with a ten-to-fifteen-minute profanity-laden speech in which he lobbed numerous epithets at Wells, including "bitch ass nigger," "mother fucker," and "fucken punk."  (Doc. 47 p. 21; Doc. 60 pp. 4-6; *see also* Doc. 1-2 p. 44).  At the conclusion of his verbal tirade, Botts threatened to cut off Wells's head, then chased Wells through the kitchen with a kitchen knife while attempting to stab him.  (Doc. 47 p. 21; Doc. 60 pp. 4-6). Wells escaped out the back door of the kitchen, and the manager on site called Botts into an office.  (Doc. 1-2 p. 44).  Wells returned to work sometime later.  (Doc. 1-2 p. 44). Someone called the campus police, who arrived and investigated but made no arrests.  (Doc. 60 pp. 5-6).  After the police left, the manager on site told Wells and all of the other employees present to come into the staff dining room, where Botts apologized to Wells in front of the staff.  (Doc. 1-2 p. 44).  Botts asked Wells to apologize as well, but Wells declined.  (Doc. 1-2 p. 44). Botts was not at work on the following day, December 13, 2011.  (Doc. 47 p. 21; Doc. 60 p. 6).  On December 13, 2011, Wells sent an email to Defendants Al Baker and Gil Jones describing the pastry bag dispute and its aftermath and making clear that he was still upset about the incident; however, he did not request any further action from his employer at that time.  (Doc.  1-2 p. 44).  Botts returned to work alongside Wells from December 14-

16, 2011, during which he "tormented" Wells by "saying little comments and stuff." (Doc. 60 p. 6). Wells met with Gil Jones and the president of Gourmet Services about Botts's continuing misconduct, and they instructed him to report the harassment to the human resources department, which Wells did. After December 16, 2011, Botts was "go[ne]" and no longer worked for Gourmet Services. (Doc. 60 p. 7).

Despite Botts's use of the word "nigger" among a barrage of insults, Wells's description of the incident, which was clarified at the April 30, 2014, hearing, does not in this context lend credibility to the inference that racial animus motivated Botts's verbal assault and subsequent attempt to take lethal action with a kitchen knife during the pastry bag dispute. (Doc. 47 p. 21; Doc. 60 pp. 4-6). Moreover, even if Botts's use of the term "nigger" can be considered an indication of racial animus in this context, Wells cannot establish that his employer is responsible for Botts's hostile actions under a theory of either direct or vicarious liability, as is required to sustain his Title VII action. *Miller*, 277 F.3d at1275. Botts was not Wells's supervisor, but was merely his co-employee. (Doc. 60 p. 4). An employer is liable for the harassing conduct of the plaintiff's co-worker only if the employer 'knew or should have known of the harassing conduct but failed to take prompt remedial action.'" *Id*. at 1278. In this case, Wells's employer cannot be held liable for Botts's hostile actions because, immediately after the initial incident, and again shortly after Wells informed the human resources department that Botts was continuing to "torment" him, Wells's employer took prompt action to address the situation, and the behavior was stopped.

14

*See id.*  Moreover, because Botts's behavior was promptly stopped, it was not so pervasive as to alter Wells's terms of employment. *See Washington v. Kroger Co.*, 218 Fed. Appx. 822, 825 (11th Cir. 2007) (holding that, while a coworker's conduct in hanging a figurine was severe and physically threatening, the conduct was not so severe and pervasive that it altered the terms and conditions of the plaintiff's employment because the employer took prompt remedial action by removing the figurine and censuring the co-employee).  Therefore, Botts's behavior cannot give rise to a Title VII claim for a racially hostile work environment.

In early June, 2013, Defendant Charles Jones allegedly stated that "if he had a gun [Wells] would be the first one he would shoot because [Wells] was the first person he had seen" and that Wells "was lucky [Jones] d[id] not carry a gun anymore."  (Doc 47 p. 24). Wells alleges that Jones's conduct created a hostile workplace, but he has not alleged any facts from which it could reasonably be inferred that Jones's impulse to shoot Wells was motivated by racial animus. Title VII is not a workplace civility code, and it does not prohibit hostile conduct or discrimination in the workplace, however unreasonable, on the basis of some factor other than "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244-45 (11th Cir. 1999). Accordingly, Jones's threat to shoot Wells, while decidedly hostile, does not support a Title VII claim for a discriminatorily hostile work environment on the basis of race. *Miller*, 277 F.3d at 1275 (holding that, to establish a Title VII claim for workplace discrimination on the basis of race, the plaintiff must establish that the workplace harassment was based on his

15

race).

Wells's lengthy complaint contains a number of other allegations that the workplace was hostile and unpleasant and particularly difficult; however, after careful examination of each of those allegations and Wells's statements at the April 30, 2014 hearing, the court is unable to identify any facts from which it could reasonably be inferred that any workplace hostility alleged in the complaint was the result of racial animus. Therefore, Wells has failed to state a Title VII claim for a hostile work environment upon which relief can be granted. *See Miller*, 277 F.3d at 1275 (holding that, to establish a claim for a hostile work environment under Title VII, the plaintiff must establish that he suffered workplace harassment on the basis of his membership in a class protected by Title VII, such as race). Further, the court concludes that additional attempts to amend would be futile and that Wells's hostile work environment claim is due to be dismissed with prejudice.

## C.    Title VII: Deprivation of Pay

Wells alleges that his employer discriminated against him on the basis of race in violation of Title VII by reducing and withholding his pay. A plaintiff may state a claim for race discrimination under Title VII by alleging facts that, if believed, would qualify as either direct or indirect evidence of the employer's intent to discriminate on the basis of race. *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257 (11th Cir. 2012). "'Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption.'" *Id*. (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir.

16

2004)). "'Indirect evidence is circumstantial evidence.'" *Id.* (quoting *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012)).

In the February 24, 2014, Recommendation, and at the April 30, 2014 hearing in this case, Wells was advised that his Title VII race discrimination claims would be dismissed unless he provided factual averments that, if proved, would constitute either direct or indirect evidence that Wells's ill-treatment in the workplace, including deprivation of pay, was the result of racial animus. (Doc. 39 pp. 7-8; Doc. 60 pp. 10-15).   Despite being provided numerous opportunities to allege specific facts from which it could reasonably be inferred that he was deprived of pay on the basis of his race, Wells has not done so.   Because Wells has failed to allege any facts from which it could be inferred that he was deprived of pay on the basis of his race, the court concludes that Wells has failed to state a claim for discrimination under Title VII for deprivation of pay.   Further, the court concludes that further attempts to amend would be futile and that Wells's Title VII discrimination claim is due to be dismissed with prejudice.

**D.    Title VII: Retaliation**

Wells alleges that he was terminated on June 10, 2013, for filing an EEOC claim  on April 9, 2013, on the pretext that, while on his watch, the kitchen's health department score of 74 was too low.  (Doc. 47 pp. 26-27).  Wells also alleges that he was subjected to unlawful retaliation in violation of Title VII when Gourmet Services, Inc., failed to provide his prospective employers with positive references and other requested information.  (Doc. 61).

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

To establish that the plaintiff engaged in statutorily protected expression, the plaintiff must show that he "'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.* 291 F.3d 1307, 1311 (11th Cir. 2002) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997)).  The plaintiff's burden under this standard has both a subjective and an objective component:

> [The] plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Id*. (quoting *Little*, 103 F.3d at 960).

In Wells's April 9, 2013, EEOC complaint, he alleged that his employer discriminated on him on the basis of his race by withholding promised bonuses, refusing to allow him to discipline or promote employees, and reducing his pay.  (Doc. 47 p. 35).  Wells has also made numerous allegations in this lawsuit that his employer subjected him to race- and national-origin discrimination, retaliation, and a hostile work environment in violation of Title VII.  However, despite being given numerous opportunities to do so, Wells has

repeatedly failed to allege any facts from which it could possibly be inferred that any of the allegedly-discriminatory or hostile acts were motivated by racial animus or national-origin discrimination, or that he was subjected to retaliation because he filed an EEOC complaint or because he filed this lawsuit. Therefore, Wells does not demonstrate that he engaged in statutorily-protected expression under Title VII because he fails to articulate any objectively-reasonable basis for his contention that the grievances alleged in his EEOC charge or in his complaint were acts of race- or national-origin discrimination or retaliation in violation of Title VII.

Accordingly, the court concludes that Wells is unable to state Title VII claim for retaliation. Further, the court concludes that further attempts to amend would be futile and that Wells's Title VII retaliation claim is due to be dismissed with prejudice.

## E.     FLSA Claim

The FLSA generally requires employers to pay overtime wages in the amount of one and one-half times the employee's "regular rate" for all hours worked in excess of forty hours. *See* 29 U.S.C. § 207. The "regular rate of pay" is the "'hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed.'" 29 C.F.R. § 779.419(b) (quoting *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). Wells alleges that, despite working in excess of 40 hours per week, he was not paid overtime wages as required under the FLSA.

Wells recognizes that the overtime requirements of the FLSA do not apply to certain

exempt employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "Chefs, such as executive chefs and sous chefs, who have attained a four-year specialized academic degree in a culinary arts program, generally meet the duties requirements for the learned professional exemption. The learned professional exemption is not available to cooks who perform predominantly routine mental, manual, mechanical or physical work." 29 C.F.R.301 (e)(6).   In his complaint, Wells alleges that, despite his $ 62,500 per year base salary and job title of Executive Chef (and later Executive Chef/Food Production Manager), he was in fact a menial employee who spent at least ninety percent of his hours at work engaged in manual, physical kitchen labor. (Doc. 47 pp. 11, 13; Doc. 1-2 p. 9).  Further, although Wells's resume reflects that he studied culinary arts at several institutions, including four years of study at the Food and Maritime Trade School in New York City, New York  (Doc. 1-2 p. 3), Wells argues that he lacks a four-year college degree in a culinary arts program.  Wells's status as an exempt employee, if any, is not an element of his FLSA claim; rather, it is an affirmative defense, and, if raised, the burden of proving the exemption is on Wells's employer. *Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2011).

Accordingly, because Wells alleges facts which, if proved, would demonstrate that he was not compensated at the overtime rate for hours worked in excess of 40 hours per week, the court concludes that Wells has stated an FLSA claim upon which relief can be granted.

**E.     State Law Claims**

Wells alleges that the Defendants committed promissory fraud by inducing him to enter into an employment contract by promising Wells that, in addition to his yearly salary, he would be "eligible for a bonus program based on food cost reduction" to be agreed upon at a later date.  (Doc. 47 p. 3-7, Doc. 1-2 p. 9).  According to Wells, the Defendants never intended to, and never did, finalize an agreement for those bonuses or pay him those bonuses, thereby breaching the employment contract.  (Doc. 47 p. 3-7, 19; Doc. 1-3 pp. 1-2).    In addition, Wells alleges that the Defendants have slandered him by falsely representing the reasons for his termination to other potential employers.  (Doc. 47 p. 27).

Wells's claims for breach of contract, promissory fraud, and slander arise under Alabama state law.  *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1204 (11th Cir. 2003) (recognizing an action for promissory fraud was governed by Alabama law); *Hopkins v. BP Oil, Inc.*, 81 F.3d 1070, 1071 (11th Cir. 1996) (recognizing that an action for breach of contract was governed by Alabama law).  The court does not have original jurisdiction over these state law claims because they do not arise under federal law and complete diversity is lacking.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1332(a) (conferring original diversity jurisdiction on the federal courts in civil actions "between citizens of different states" in which the jurisdictional amount is met); *Wis. Dept. of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district

court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State.").

However, the court does have original jurisdiction over Wells's FLSA claim because that claim arises under federal law. "[I]n any civil action of which the district courts have original jurisdiction" this court may exercise supplemental jurisdiction over "other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  In deciding whether Wells's breach of contract and promissory fraud claims are part of the same case or controversy as his FLSA claim, the court must look to whether the claims arise from the same facts, or involve similar occurrences, witnesses, or evidence. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996).  Wells's FLSA claim arises out of his allegations that, during his employment with Gourmet Services, Inc., he worked more than forty hours per week but was not paid overtime wages.  Wells's promissory fraud and breach of contract claims arise out of his allegation that he was promised eligibility in a performance-based bonus program unrelated to the number of hours worked, that he entered into an employment contract in reliance on that promise, and that his employer never intended to, and never did, enter him in the bonus program or pay him a performance-based bonus.  Wells's slander claim arises out of his allegation that the Defendants have misrepresented to other potential employers that he was terminated due to

22

low health department scores, despite the fact that he was not responsible for the low scores.

Thus, none of Wells's claims arise from the same facts or involve similar occurrences or

evidence.  Further, the extent, if any, to which the same witnesses may be involved is unclear,

and any overlap in witnesses is solely a function of the fact that the federal and state law

claims all relate in some way to Wells's employment at Gourmet Services, which, by itself,

is not a sufficient nexus to establish supplemental jurisdiction.  *See Lyon v. Whisman*, 45

F.3d 758, 762 (3d Cir. 1995) (holding that supplemental jurisdiction was lacking where

"[t]he only link between [the plaintiff's] FLSA and state law claims [was] the general

employer-employee relationship between the parties").

      As the Third Circuit stated in *Lyon*, *supra*:

> [The plaintiff's] FLSA [overtime] claim involved very narrow, well-defined
> factual issues about hours worked during particular weeks. The facts relevant
> to [the] state law contract and tort claims, which involved [the employer's]
> alleged underpayment of a bonus and its refusal to pay the bonus if [the
> plaintiff] started looking for another job, were quite distinct. In these
> circumstances it is clear that there is so little overlap between the evidence
> relevant to the FLSA and state claims, that there is no "common nucleus of
> operative fact" justifying supplemental jurisdiction over the state law claims.
> In fact, it would be charitable to characterize the relationship of the federal and
> state claims as involving even a "loose" nexus. Thus, Article III bars federal
> jurisdiction.

*Lyon*, 45 F.3d at 763.

      Likewise, in this case, the FLSA claim and the state law claims do not arise from the

same facts or involve similar occurrences or evidence, and supplemental jurisdiction is

lacking.  *Cf. Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996) (holding that

supplemental jurisdiction was lacking over airline retirees' breach-of-contract claim for cancellation of retirement benefits in the form of free airline flights because the facts underlying that claim were completely unrelated to the facts underlying a federal ERISA claim for changes to medical retirement benefits); *Fernandez v. Xpress Painting Corp.*, 2012 WL 3562255 at *3 (S.D. Fla. 2012) (explaining the reluctance to find that FLSA claims and additional state law contract or tort claims form part of the same "case or controversy" for purposes of supplemental jurisdiction where the only factor shared by the state and FLSA claims is the existence of an employer-employee relationship between the parties).

## CONCLUSION

Accordingly, it is

**ORDERED** that Wells's April 30, 2014, oral motion to amend his amended complaint to include a claim that he was subjected to a hostile work environment, wrongful discharge, and deprivation of pay in violation of Title VII on the basis of national origin be and is hereby **GRANTED**.

Further, it is  the **RECOMMENDATION of the Magistrate Judge** that the motion for judgment on the pleadings (Doc. 37) be **granted** to the following extent:

1.     that, pursuant to Fed. R. Civ. P. 12(c) and  28 U.S.C. § 1915(e)(2)(B)(ii), Wells's Title VII claim that he was subjected to a hostile work environment, wrongful discharge, and deprivation of pay on the basis of national origin be **dismissed with prejudice**;

24

2.     that, pursuant to Fed. R. Civ. P. 12(c) and  28 U.S.C. § 1915(e)(2)(B)(ii), Wells's claim that he was subjected to a hostile work environment in violation of Title VII on the basis of his race be **dismissed with prejudice**;

3.     that, pursuant to Fed. R. Civ. P. 12(c) and  28 U.S.C. § 1915(e)(2)(B)(ii), Wells's claim that he was deprived of pay in violation of Title VII on the basis of his race be **dismissed with prejudice**;

4.     that, pursuant to Fed. R. Civ. P. 12(c) and  28 U.S.C. § 1915(e)(2)(B)(ii), Wells's claim subjected to unlawful retaliation in violation of Title VII be **dismissed with prejudice**;

5.     that Wells's state law claims be **dismissed** for lack of jurisdiction;

6.     that, in all other respects, the motion for judgment on the pleadings (Doc. 37) be **denied**; and

7.     that this case proceed solely on Wells's FLSA claim. It is further

**ORDERED** that the parties shall file any objections to the said Recommendation on or before **August 4, 2014.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District

Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)*; see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

  Done this 21st day of July, 2014.


       /s/Charles S. Coody
      CHARLES S. COODY
      UNITED STATES MAGISTRATE JUDGE