IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LAWRENCE WELLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:13-CV-516-WKW |
| ) | [WO] |
| GOURMET FOOD SERVICES, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff Lawrence Wells's Motion for Extension of Time to Conduct Discovery and File Dispositive Motion (Doc. # 74). The motion is opposed by Defendants. (Doc. # 76.) After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the motion is due to be denied.

### I. BACKGROUND

Mr. Wells filed his law suit *pro se* on July 19, 2013. In his 819-page Complaint, Mr. Wells alleged that he was subjected to a hostile work environment, wrongfully discharged, and deprived of pay by his former employer, Gourmet Services, Inc., and its agents. At the time Mr. Wells filed suit, he was living in Austell, Georgia. On October 8, 2013, however, he telephoned to inform the court that he had traveled abroad and was currently in Phnom Penh, Cambodia. He also

requested that the status and scheduling conference set for October 17, 2013, be held by telephone or teleconference. During the telephone conversation, Mr. Wells was instructed to file a written motion containing his scheduling request and was specifically told that the court does not accept filings or communications via email. Despite stating that he would submit his motion via express mail, Mr. Wells immediately began attempting to communicate with the court and submit motions by email. He also attempted to effect service of his complaint on Defendants by sending copies of the emails he sent to their personal accounts.

In response to these efforts, an Order (Doc. # 18) was issued again instructing Mr. Wells that he was not to communicate with the court or submit motions via email and informing Mr. Wells that Rule 5(b) of the Federal Rules of Civil Procedure requires that he mail Defendants a copy of anything he files with the court. The Order further explained any document filed with the court should contain a certificate of service, specifically stating that the pleading or other document has been sent to Defendants. Lastly, the Order pushed the status and scheduling conference back almost two months so that Mr. Wells could attend and advised Mr. Wells that the case would "move forward even if he must proceed *pro se*, and even if he has left the country." (Doc. # 18.)

On February 13, 2014, Defendants moved for judgment on the pleadings, and the Magistrate Judge filed his Recommendation that Defendants' motion

should be granted unless Mr. Wells filed an amended complaint that alleged sufficient particularized facts to state a claim for Title VII discrimination. (Doc. # 39.) While awaiting Mr. Wells's amended complaint, the Magistrate Judge stayed discovery and reserved ruling on motions involving third party discovery disputes. On March 20, 2014, Mr. Wells filed his amended complaint. The amended complaint, however, did not comply with Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court opted to give Mr. Wells the opportunity to appear in person at a hearing where he could better explain his claims. (Doc. # 48.) Recognizing that Mr. Wells was still residing abroad, the court gave him three weeks to advise the court of the dates he could return to the United States.

Mr. Wells informed the court on April 10, 2014, that he was currently in the United States and wished to schedule a hearing before April 30, 2014, at which time he anticipated returning overseas. (Doc. # 51.) A hearing was set for April 30, 2014, and all parties attended. During the hearing, Mr. Wells made an oral motion to amend his complaint to better address his claim that he was subject to a hostile work environment, wrongfully discharged and deprived of pay. Shortly thereafter, he filed a motion to submit additional documentary evidence. (Doc. # 56.) The Magistrate Judge granted the motions, but when notice of the decision

was mailed to Mr. Wells, the documents were returned with the United States Postal Service notation, "Return to Sender, Unclaimed, Unable to Forward, 2nd Notice 4/21, RTS 4/29." Accordingly, on May 23, 2014, the Magistrate Judge ordered that Mr. Wells supply the court with his current mailing address by June 6, 2014. (Doc. # 58.) On June 2, 2014, Mr. Wells informed the court that he was now living in Deltona, Florida, and supplied a new mailing address.

On July 14, 2014, Mr. Wells filed a motion to amend his complaint, which the court granted on July 21, 2014, in light of Mr. Wells's *pro se* status and for good cause. (Docs. # 61 & 63.) The Magistrate Judge then entered a Recommendation (Doc. # 64) that Defendants' Motion for Judgment on the Pleadings (Doc. # 37) be granted in part, effectively dismissing all of Mr. Wells's claims with prejudice except for his claim that Defendants violated the Fair Labor Standards Act ("FLSA"). On August 4, 2014, Mr. Wells informed the court that he had been traveling throughout Texas looking for work and intended to travel to Dubai in the coming days to continue his search for employment. He informed the court that he would continue to use the address in Florida until he found a permanent address in Dubai, and he requested additional time in which to object to the Magistrate Judge's Recommendation.

On August 5, 2014, the Magistrate Judge entered an Order extending the window for Mr. Wells to object to the July 21, 2014 Recommendation (Doc. # 65)

4

until August 26, 2014. The Order also reminded Mr. Wells that "regardless of whether he is able to retain counsel, the court will move this case forward even if he must proceed pro se, and even if he has left the country or is traveling within the United States." (Doc. # 66.) More than one month passed, and as of September 9, 2014, no objections had been filed to the Magistrate Judge's Recommendation (Doc. # 65). The Recommendation was adopted on September 9, 2014, and the case was ordered to proceed solely on Mr. Wells's FLSA claim. On September 11, 2014, the Magistrate Judge lifted the stay previously imposed on the case and issued an amended scheduling order, setting discovery to conclude on December 10, 2014, and dispositive motions to be submitted by January 9, 2015.

## II. DISCUSSION

Almost one full month after the discovery period concluded, a notice of appearance was filed on behalf of Mr. Wells along with a request that discovery be reopened and that both the discovery deadline and the dispositive motion deadline be extended four months. Mr. Wells's newly hired attorney informed the court that Mr. Wells was still in Dubai, that he never received the Amended Scheduling Order (Doc. # 77), and that he only recently sought the assistance of counsel. Applying the provisions of Federal Rule of Civil Procedure 6(b)(1)(B), Mr. Wells's attorney argues that good cause and excusable neglect exist in this case and warrant an extension of the deadlines. Defendants oppose the motion to

5

extend and highlight the repeated opportunities Mr. Wells was given to amend his complaint and recurrent warnings Mr. Wells was given regarding the need to keep abreast of the judicial determinations and deadlines in his case.

Pursuant to Rule 6(b)(1)(B), a court "may for good cause," grant an extension of time "upon [a]motion made after the expiration of the specified period," if "the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The phrase "excusable neglect" appears in several federal procedural rules, including Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, as addressed in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), and in Rule 60(b) of the Federal Rules of Civil Procedure, as addressed in *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848 (11th Cir. 1996). In *Pioneer*, the Supreme Court held that the determination of "what sorts of neglect will be considered 'excusable' . . . is at the bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395. These circumstances "include . . . the danger of the prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. In *Cheney*, the Eleventh Circuit noted that in *Pioneer*, "the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party

and to the interest of efficient judicial administration in determining whether the district court abused its discretion." 71 F.3d at 750.

To begin, it is important to note that Mr. Wells is not merely asking this court to accept an untimely answer, dispositive motion, or other filing. Rather, he is requesting that the court forgo deadlines under which Defendants have been operating and give him an additional four months to engage in discovery and file a dispositive motion. Applying the *Pioneer* factors, the court is unable to find excusable neglect on the part of Mr. Wells to justify such an expansive request.

### A. Prejudice

The first *Pioneer* factor requires consideration of the danger of prejudice to the nonmovant. 507 U.S. at 395. Mr. Wells attempts to characterize any possible prejudice felt by Defendants as nothing more than the pains of losing out on the opportunity to benefit from a "quick victory." (Doc. # 74.) His argument, however, is unpersuasive.

Defendants are not seeking a quick victory. Rather, they are requesting that the court adhere to the discovery and dispositive motion deadlines, under which they have been operating since early September. Defendants highlight that Mr. Wells initially filed suit on July 19, 2013, approximately a year and a half ago, during the first portion of which Mr. Wells attempted to engage in extensive

discovery practices. When the stay was lifted, Mr. Wells was given an additional three months to conduct discovery.

It would no doubt prejudice Defendants to again – one month after they believed the discovery period had concluded – be exposed to a four-month period of discovery and push back the possibility of a timely resolution of Mr. Wells's remaining claim. Accordingly, the first *Pioneer* factor weighs in favor of denying Mr. Wells's motion due to his failure to show excusable neglect.

B.  **Length of the Delay and Its Potential Impact on the Judicial Proceedings**

The second *Pioneer* factor requires consideration of the "length of the delay and its potential impact on judicial proceedings." 507 U.S. at 395. The dates discovery was to conclude and dispositive motions were due mark the starting point for measuring the length of the delay. While just under one month has passed from the date discovery was to conclude (December 10, 2014) and the date Mr. Wells filed his motion to extend (January 7, 2015), Mr. Wells is requesting that discovery be reopened and extended four months, thereby pushing back the discovery deadline almost five months from the date it was originally set to conclude. And while Mr. Wells's motion for an extension was filed two days before dispositive motions were due, he again seeks to adjust the deadline by four months.

While neither a pretrial conference nor trial date has been set, Mr. Wells is seeking a four-month extension of two important deadlines so that his attorney can only now begin to become familiar with his case. (Doc. # 74) ("Counsel for Plaintiff needs additional time to review the documents already filed prior to making a determination whether to file [a] motion for summary judgment . . . . Furthermore, it is unclear to counsel whether the documents already filed include sufficient discovery documents related to the FSLA claim."). To reset the clock by four months to provide Mr. Wells's counsel an opportunity to come up to speed on a year and a half's worth of litigation and to engage in discovery that was already supposed to have concluded would be a delay that strains the efficient administration of justice.

C.     **The Reason for the Delay**

The third *Pioneer* factor focuses on the reason for the delay. 507 U.S. at 395. Mr. Wells's attorney asserts that he was only recently hired by Mr. Wells and that Mr. Wells never received a copy of the Amended Scheduling Order due to his move overseas. In *Pioneer* the Supreme Court observed that "there is no indication that anything other than the commonly accepted meaning of the phrase ["excusable neglect"] was intended by [Rule 6(b)'s] drafters." *Id.* at 391. As explained in *Pioneer,* "the ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or . . . 'to leave undone or unattended to esp[ecially]

9

through carelessness.'" *Id.* at 388 (quoting Webster's Ninth New Collegiate Dictionary 791 (1983)). "The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.*; *see also Raymond v. Int'l Bus. Machs. Corp.,* 148 F.3d 63, 66 (2d Cir.1998) ("[M]ere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect' justifying relief under" under Rule 6(b)(1)(B) (citing *Pioneer,* 507 U.S. at 391–92)).

Here, the court is not dealing with a mere mistake of fact via clerical error. *See Advanced Estimating Sys., Inc. v. Riney,* 130 F.3d 996, 999 (11th Cir. 1997) (explaining that when there is a "mistake of fact," such in *Cheney,* which was a "miscommunication case or clerical-error case," the neglect can be excusable). Rather Mr. Wells's attorney asserts that the extension is needed because Mr. Wells "was neglectful in not sending his new address," but states that "nothing about the legal proceeding up to that time put him on notice that deadlines would be issued and expired before he could get settled in Dubai." (Doc. # 74.) Mr. Wells's attorney, however, is incorrect. Mr. Wells was repeatedly informed that the case would "move forward even if he must proceed *pro se*, and even if he [had] to [leave] the country." (Docs. # 18 & 57.) Mr. Wells was also reminded that, "while the case is pending, it is his duty to provide direct, written notification to the Clerk of this Court of any change of address or telephone number" and that should he fail

10

"to comply with [this obligation], the court will treat his failure to comply as an abandonment of the claims set forth in the complaint and as a failure to prosecute this action." (Doc. # 57.)

The record indicates that Mr. Wells was aware of these warnings, as he responded to the Magistrate Judge's May 23, 2014 Order (Doc. # 57) by providing a change of address (Doc. # 59) and informing the court that he would continue to use his Florida address until he had a new address in Dubai and would send the new address "ASAP, to the Clerk of This Court." (Doc. # 65.) Despite his recognition of the importance of keeping the court informed of his changes in residencies and impending objection deadlines, the court did not hear from Mr. Wells from August 4, 2014, to the filing of the present motion on January 7, 2015. The court cannot conclude this five-month window was the result of mere carelessness. Mr. Wells initiated this lawsuit and was informed on more than one occasion that the lawsuit would move forward regardless of his changing country of residence. He cannot now claim that failing to maintain any contact with the court for five months amounts to excusable neglect. Accordingly, this third factor, like the preceding two, weigh in favor of denying Mr. Wells's motion.

**D.  Good Faith**

The fourth *Pioneer* factor examines "whether the movant acted in good faith." 507 U.S. 395. Mr. Wells argues that he acted in good faith because all his

failures in not properly pursuing his claim were the result of his need to seek employment overseas. He explains that "[t]here is much involved in such a move, including travel, and getting a job, and obtaining all the other basic[ ] needs of life," such as "food, clothing, shelter[,] and furnishings." (Doc. # 74.) In light of the strength of the first three *Pioneer* factors, the court sees no need scrutinize Mr. Wells's excuse.

### III.  CONCLUSION

"[A]ll relevant circumstances surrounding" counsel for Defendants' missed deadlines have been considered. *Pioneer,* 507 U.S. at 395. The presence of prejudice to Defendants coupled with the extent of the suggested delay and basis for the motion do not support a finding of excusable neglect under Rule 6(b)(1)(B). Accordingly, it is ORDERED that Mr. Wells's Motion for Extension of Time to Conduct Discovery and File Dispositive Motions is DENIED.

DONE this 27th day of January, 2015.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE