IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LAWRENCE WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-516-WKW |
| | ) | (WO) |
| GOURMET SERVICES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In the remaining claim in this case Plaintiff Lawrence Wells contends that his former employer, Defendant Gourmet Services, Inc., failed to comply with the overtime pay requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  Before the court is Plaintiff's motion for reconsideration of the court's July 24, 2015 Order continuing the trial, reopening discovery, and allowing Defendants to raise FLSA exemption defenses.  (Doc. # 131.)  *See* 29 U.S.C. § 213 (setting forth FLSA exemption defenses).  Also before the court are Plaintiff's motion in limine (Doc. # 104) and Defendants' motions in limine (Doc. # 107; Doc. # 108; Doc. # 111).

In his motion for reconsideration, Plaintiff argues that reopening the discovery deadline, continuing the trial, and allowing Defendants to raise FLSA exemption defenses unduly prejudiced him.  Plaintiff's argument regarding

prejudice fails for two reasons.  First, Defendants have since been ordered to reimburse Plaintiff for attorney's fees and expenses that he incurred because of the rescheduling of the trial.  (Doc. # 136.)  Second, *both* sides were thoroughly unprepared for trial, and *both* sides benefitted from the continuance.  Continuing the trial and reopening discovery not only reversed the course of the court's previous order granting Plaintiff's motion to strike the FLSA defenses (Doc. # 90), but it also effectively abrogated an earlier order (Doc. # 77) denying *Plaintiff's* motion (Doc. # 74) for an extension of time to conduct discovery and file dispositive motions.

One example of the benefits the continuance provided Plaintiff is immediately evident from the record.  By Order of the Magistrate Judge entered on September 11, 2014, "all discovery as authorized by Rules 26-37, and 45, Federal Rules of Civil Procedure" was required to "be completed on or before **December 10, 2014**."[1]  (Doc. # 71 at 1 (emphasis in original).)  On January 17, 2015, the court denied Plaintiff's motion to extend that deadline.  (Doc. # 77.)  Nevertheless, on June 12, 2015,[2] Plaintiff provided pretrial disclosures that identified an expert

---

[1]To the extent that the parties appeared to be under the mutual impression that the Magistrate Judge's September 11, 2014 Amended Scheduling Order (Doc. # 71) did not apply to expert witness disclosures pursuant to Rule 26(a)(2), that impression would not have supported an equitable argument that Plaintiff's June 2015 disclosures should have been deemed timely. Absent a stipulation or court order, the deadline to disclose expert testimony and to provide a written expert report is "at least 90 days before the date set for trial or for the case to be ready for trial," Fed. R. Civ. P. 26(a)(2)(D), which, in this case, would have been April 28, 2015.

[2] Pursuant to a February 4, 2015, Order, June 12, 2015 was the deadline for pretrial

witness, Cynthia Underwood, Esq., CPA.  (Doc. # 81 at 1.)  Defendants filed a motion in limine (Doc. # 107) to exclude Underwood's testimony because the pretrial disclosure was their first notice that Plaintiff intended to call an expert witness and because Plaintiff did not provide an expert report in accordance with Federal Rule of Civil Procedure 26(a)(2) prior to June 12, 2015.

In response to the motion in limine, Plaintiff's counsel, James E. Long, affirmatively misrepresented to the court that he emailed the expert report to Defendants on February 27, 2015, in preparation for mediation, and that he also gave Defendants a copy of the report at the mediation on March 2, 2015.[3]  (Doc. # 116.)  Evidence submitted by both parties indicates that, on those dates, Plaintiff's counsel did provide Defendants' counsel with a "report" from Underwood showing the amount of FLSA overtime allegedly owed.[4]  (Doc. # 116-1 at 1-2; Doc. # 121-

---

witness disclosures pursuant to Federal Rule of Civil Procedure 26(a)(3).  (Doc. # 78 at § 5.) The June 12, 2015 deadline is not pertinent to the deadline for disclosure of expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2), and Plaintiff does not argue otherwise.

[3] Plaintiff states: "[T]he expert report was timely sent to and received by Defendants counsel by Email on February 27, 2015 prior to the March 2, 2015 mandatory settlement conference. See Email dated February 27, 2015 attached as Exhibit A. Another copy of the expert report was given to Defendants counsel on March 2, 2015, as reflected in the report to the court on the settlement conference. See Court Report attached as Exhibit B. Defendants have known about and had a copy of this expert report for months and therefore are not prejudiced by the testimony of Plaintiff expert and the use of Plaintiff's Exhibit 12."  (Doc. # 116 at ¶ 1 (sic).)

[4] Plaintiff argued that neither his failure to disclose his intent to rely on an expert nor his failure to provide an expert report until long after the close of discovery posed any prejudice to Defendants because his oblique disclosures in February and March 2015 should have tipped Defendants off that he planned to use Underwood as an expert witness.  At the same time, despite the fact that *Plaintiff* has consistently injected FLSA exemption defenses into this lawsuit

2.)  However, the "expert report" Plaintiff provided in February and March 2015 was not the expert report required by Fed. R. Civ. P. 26(a)(2).  Underwood's Rule 26 expert report is very clearly dated June 4, 2015.[5]  (Doc. # 116-3.)  The document Plaintiff provided Defendants in February and March 2015 was a 44-page document (*see* Doc. # 116-1 at 1), while the Rule 26 expert report vastly exceeds 44 pages.  (Doc # 116 at 2.)  Further, it is undisputed that, prior to June 12, 2015, Plaintiff did not specifically disclose that he intended to call Underwood as an expert witness.[6]

The amount of overtime owed was to be a primary issue at trial because it is critical to Plaintiff's proof of damages.  The time records and supporting documentation Underwood used to create her report spanned two and one-half

from the time he filed the amended complaint that included the FLSA claim, and despite the fact that Defendants argued the applicability of FLSA exemption at an April 30, 2014 hearing before the Magistrate Judge (Doc. # 60 at 25-27), Plaintiff contends that he was prejudiced by the allowance of the FLSA exemption defenses because they were not raised in a timely answer. Plaintiff appears to be completely unaware of the rank irony of his position: praying that the court will overlook any prejudice to Defendants and spare him from the natural consequences of his own technical failure, while simultaneously urging the court to inflict on Defendants the most drastic consequences available for their similar technical failure.

[5] It appears that Plaintiff's February and March 2015 "disclosures" included some of the documentation that was ultimately incorporated in the expert report.  This does not, however, substantiate Plaintiff's representation that he disclosed the *expert report* on those dates, and it is not tantamount to a disclosure that Plaintiff intended to call Underwood as an expert witness or to use her overtime calculations as evidence in this case.

[6] Plaintiff's February 27, 2015 email merely stated: "As promised I have attached below a copy of the 44 page FLSA Overtime Report prepared by attorney and CPA Cynthia Underwood for the Wells case. Please review it and let's discuss it during our face-to-face settlement conference in Lanett Alabama at the Hampton Inn on Monday March 2, 2015 at 11 a.m. CST (12 noon EST). I look forward to seeing you then."  (Doc. # 116-1 at 1.)

years and, according to Plaintiff, were so voluminous that they "could not be filed as an attachment to [Plaintiff's] response [to the motion in limine] due to electronic filing space limitations." (Doc. # 116 at 2.) In opposing the motion in limine, Plaintiff submitted legal authority to the effect that a CPA's expert testimony regarding the amount of overtime owed should be admitted because it "will assist the trier of fact in comprehending factual issues beyond the scope of understanding of the average person." (Doc. # 116-4 at 4.) The court will not rule on the merits of the pending motions in limine at this time because the motions were mooted by the continuance of the trial. However, Plaintiff may rest assured that, if the trial had not been continued, he would have had to present his case and his voluminous overtime documentation without the aid of an expert to establish the amount of overtime pay owed. Thus, Plaintiff's failure to timely disclose his expert is just one[7] example of why Plaintiff was not prejudiced by the continuance and why a continuance was necessary to ensure that any trial would not be a pointless exercise at which both parties were grossly unprepared to present their case to the jury in an organized, meaningful way.

The FLSA provides for an award of liquidated damages in an amount equal to the unpaid overtime compensation award. 29 U.S.C. § 216(b). However, 29

---

[7] At the time of the continuance, Plaintiff was also facing a motion in limine to exclude several fact witnesses that he allegedly identified for the first time in his June 12, 2015 pretrial disclosures. (Doc. # 108.)

U.S.C. § 260 provides that the employer may avoid all or part of the liquidated damages award by showing that the failure to pay overtime "was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  Although the Order (Doc. # 90) granting Plaintiff's motion to strike (Doc. # 85) barred Defendants from raising FLSA exemption defenses under 29 U.S.C. § 213, Defendants intended to argue at trial that the § 260 good faith defense applied because they reasonably believed Plaintiff was an executive and managerial employee who was exempt from the FLSA overtime requirements under § 213.  In continuing the trial, the court found that a continuance was necessary because allowing Defendants to litigate the good faith defense while prohibiting them from asserting the FLSA exemption defenses created too great a risk of juror confusion.

Plaintiff now argues that, like the § 213 exemption defenses, Defendants' good faith defense is an affirmative defense and, therefore, should be disallowed on grounds that Defendants failed to raise it in an answer.  Defendants argue that Plaintiff did not ask for liquidated damages in his amended complaint and, therefore, they were not on notice that they needed to raise the defense to liquidated damages until Plaintiff mentioned liquidated damages for the first time in the parties' proposed pretrial order.  (Doc. # 132 at 6 n.3.)

Plaintiff's retroactive contention that Defendants should have been

precluded from raising the defense of good faith at trial overlooks the fact that Plaintiff never moved to strike that defense and instead took the initiative in presenting the issue for litigation.[8]  The portion of the proposed pretrial order[9] that set forth *Plaintiff's* contentions waxed on at length about Defendants' alleged willfulness and lack of good faith.  Plaintiff moved "to strike Defendants' FLSA *exemptions* (See 29 U.S.C. @ 213)."  (Doc. # 85 at 1 (emphasis added; otherwise, *sic.*))  However, Plaintiff did not include the § 260 good faith defense in his motion to strike.  *Plaintiff's* trial brief, proposed jury instructions, and proposed jury verdict forms presented those issues for resolution at trial.[10]  Thus, Plaintiff fully

---

[8] In an off-the-record conference call on July 22, 2015, Plaintiff did take the position that good faith was an affirmative defense that should be disallowed.  (*See* Doc. # 132 at ¶ 7.)  However, Plaintiff did not raise this argument in his motion to strike, and, in the proposed pretrial order, Plaintiff's trial brief, Plaintiff's proposed jury instructions, and Plaintiff's proposed jury verdict form, *Plaintiff* presented Defendants' willfulness and alleged lack of good faith as issues to be litigated at trial.  (Doc. # 101; Doc. # 103; Doc. # 106.)  The court takes judicial notice of the inequity in Plaintiff's argument that *he* was prejudiced by surprise on the eve of trial.

[9] Plaintiff submitted the proposed pretrial order to the court by email on June 23, 2015.  In the email to which the proposed pretrial order was attached, Plaintiff's counsel stated only that "Plaintiff will be filing a motion objecting to the FLSA exemptions in Defendants contentions."  Plaintiff stated no objection to the defense of good faith which, as noted, he himself chose to include *in his own list of contentions* in the proposed pretrial order.  A copy of the June 23, 2015 email and attached proposed pretrial order is included as an exhibit to this memorandum opinion.

[10] Section 260 provides that the court, not the jury, ultimately determines whether liquidated damages are appropriate in the face of a defendant's attempt to show good faith.  However, juries are often presented with special interrogatories and given the opportunity to provide an advisory opinion on the question.  *See Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 1232, 1239 (D. Kan. 2005).  In this case, Plaintiff submitted a proposed jury verdict form that included the following question: "Has it been proved that the Defendants either knew its conduct was prohibited by the Fair Labor Standards Act or showed reckless disregard for whether its conduct was prohibited by the Fair Standards Act?" (Doc. # 103 at 1 (sic).)  Plaintiff also submitted proposed jury instructions that included (1) an instruction for the jury to determine whether the

anticipated and actively participated in presenting the issues of good faith and willfulness for litigation. Because Plaintiff was the one who consistently introduced and urged consideration of the good faith defense, Defendants would have been prejudiced if, at the last minute, they had not been allowed to raise it. Once the parties placed the good faith defense before the jury, the potential for juror confusion would have been unmanageable, particularly in the context of a situation where *none* of the parties was prepared to present a cogent case at trial.

In any event, the fact remains that this case was not ready for trial at the time it was continued, and both sides benefitted from a continuance. Although Defendants' procedural failures were the proverbial straw that broke the camel's back (*see* Doc. # 128), *both* sides' lack of preparation seriously threatened to transform what should have been a fairly simple jury trial on the merits of a discrete FLSA overtime claim into an onerous mess, to the prejudice of the parties,

---

FLSA violation was willful; (2) the question "Has it been proved that the Defendants either knew its conduct was prohibited by the Fair Labor Standards Act or showed reckless disregard for whether its conduct was prohibited by the Fair Standards Act?"; and (3) a special interrogatory about whether the FLSA violation was willful. (Doc. # 106 at 7-9, 11-12 (sic).) Plaintiff's trial brief explained that willfulness and good faith were relevant to Plaintiffs claims for liquidated damages and attorney's fees. (Doc. # 101 at 2, 8.) The court notes that the statute of limitations, which is extended from two years to three years if the jury finds that the FLSA violation was willful, is not at issue in this case. *See Pena v. Handy Wash, Inc.,* 114 F. Supp. 3d 1239 (S.D. Fla. 2015) (explaining that, in an FLSA case, the judge and jury address issues of willfulness and good faith for two different purposes: the jury considers the issue as it pertains to the limitations period, and, if there is a verdict for the employee, the court considers the question to determine whether to award liquidated damages). It is therefore apparent that Plaintiff consented to and actively participated in preparing the good faith defense for submission to the court and the jury until he unexpectedly changed his mind in an off-the-record status conference less than a week before trial.

the court, and the jury.  During this time of judicial emergency in this district, the court is not at leisure to waste scarce judicial resources on circuses.  Even if, after all of the trial preparation materials had been submitted, the court had entertained Plaintiff's last-minute about-face regarding the admissibility of the good faith defense, the case would necessarily have been continued on grounds that the parties simply were not ready for trial.  However, because a continuance was warranted under the circumstances, the allowance of the FLSA exemption defenses did not prejudice Plaintiff.

Accordingly, it is ORDERED as follows:

1.    Plaintiff's motion in limine (Doc. # 104) is DENIED;

2.    Defendants' motion in limine (Doc. # 107) is DENIED;

3.    Defendants' second motion in limine (Doc. # 108) is DENIED;

4.    Defendants' third motion in limine (Doc. # 111) is DENIED; and

5.    Plaintiff's motion for reconsideration (Doc. # 131) is DENIED.

DONE this 10th day of February, 2016.

_____
            /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

**EXHIBIT**


**Proposed Pretrial Order Submitted By the Parties On June 23, 2015**

**Fwd: Wells v. Gourmet Services et. al. Joint Proposed Pretrial Order**

James Long ▓▓▓▓▓▓▓▓▓▓▓

06/23/2015 09:43 AM

From:     James Long▓▓▓▓▓▓▓▓

To:       ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓     ▓▓▓▓▓▓▓▓▓▓

1 attachment

Joint Pre-Trial OrderFinal.docx

---------- Forwarded message ----------
From: James Long ▓▓▓▓▓▓▓▓▓▓
Date: Tue, Jun 23, 2015 at 9:35 AM
Subject: Fwd: Wells v. Gourmet Services et. al. Joint Proposed Pretrial Order
▓▓▓▓▓▓▓▓▓▓

The copy I sent last night was not delivered. See copy attached.
.
---------- Forwarded message ----------
From: James Long▓▓▓▓▓▓▓▓▓
Date: Mon, Jun 22, 2015 at 7:12 PM
Subject: Wells v. Gourmet Services et. al. Joint Proposed Pretrial Order
To:▓▓▓▓▓▓
Cc: Odis Williams ▓▓▓▓▓▓▓▓▓▓

See Word format copy of above document attached. Plaintiff will be filing a motion objecting to the FLSA exemptions in Defendants contentions.
James E. Long
Attorney For Plaintiff
▓▓▓▓▓▓▓

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **LAWRENCE WELLS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| | ) | **2:13-CV-00516-CSC** |
| **GOURMET SERVICES INC.,** | ) | |
| **ET.AL** | ) | |
| **Defendants.** | ) | |

## JOINT PROPOSED PRETRIAL HEARING ORDER

A pretrial hearing was held in this case on June 25, 2015 wherein the following proceedings were held and actions taken:

1.      <u>PARTIES AND TRIAL COUNSEL:</u>

         For the Plaintiff:  James E. Long

         For the Defendants: Odis Williams

         <u>COUNSEL APPEARING AT PRETRIAL HEARING:</u>

         Same as trial counsel. Defendant reserves the right add additional counsel.

2.      <u>JURISDICTION AND VENUE:</u>

       (a) Plaintiffs' claims arise under the Fair Labor Standards Act, as amended,

            29 U.S.C. §§ *et seq.* (hereinafter "FLSA").

       (b) Subject matter jurisdiction exists as to Defendant Gourmet Services, Inc. on the basis of federal question jurisdiction under 29 U.S.C. §§ 201 *et seq.* and 28 U.S.C. § 1331. Subject Matter Jurisdiction is

1

contested as to Defendants Tia Benton, Charles Jones, Jasper Manuel, and Albert Baker as they are not considered "Employers" within the context of 29 U.S.C.A. § 203(d).

(c) Venue in the Middle District of Alabama is proper under 28 U.S.C. § 1391 (b) and 1391 (c) in that Defendant Gourmet does business in this district and a substantial part of the conduct giving rise to the claims occurred in this district.

(d) All jurisdictional and procedural requirements prerequisite to maintaining this action have been met.

3.    PLEADINGS:

The following pleadings and amendments were allowed:

(a) Plaintiff's Complaint (Doc. #1).

(b) Answer of Defendants Gourmet Services Inc., Baker, Benton, and Gil Jones to Plaintiff's' Complaint (Doc. #14).

(c) Amended Answer of Defendants Gourmet Services Inc., Baker, Benton, Gil Jones, Jasper Jones and Charles Jones (Doc. #31).

(d) Plaintiffs' Amended Complaint (Doc. #47).

4.    CONTENTIONS OF THE PARTIES:

(a)  Plaintiff:

1. Defendant Gourmet Services Inc. is engaged in commerce or in the production of goods for commerce or is an enterprise engaged in commerce or in the production of goods for commerce with gross annual sales of at least $500,000 as defined by §203 and §2611 of the FLSA. 29 U.S.C.  Gourmet Services Inc. was an "employer" of Wells as defined by §203(d) of the FLSA. At all times material to this action, Wells was an "employee" of Defendant Gourmet Services Inc. as defined by §203 (e) (1) of the FLSA, and worked

2

for the Defendant Gourmet Services Inc. within the territory of the United States within three years preceding the filing of this lawsuit. The overtime provisions set forth in §§206 and 207, respectively, of the FLSA apply to Defendant Gourmet Services Inc. and the Plaintiff was covered by §206 and §207 of the FLSA while he was employed by Defendant Gourmet Services Inc.

2. Individual Defendants Al Baker (Vice President), Tia Benton (HR Director), Gil Jones (Chief of Operations), and Jasper Manual (incorrectly identified as Jasper Jones)   (Regional Director) controlled the operations, financial affairs and the allocation of financial resources of Defendant Gourmet Services, Inc. and caused Defendant Gourmet Services Inc. to fail to pay Plaintiff according to the requirements of the FLSA and are jointly and severally liable to Plaintiff for FLSA violations. See *Goldsby v. Renosol Seating, LLC*, ---F.Supp.2d ---, 2013 WL 1689849 @6 (S.D.Ala. March 29, 2015) (discussing joint and serval individual liability under the FLSA).

3. Throughout Wells employment, Defendant Gourmet Services Inc. and individual Defendants Baker, Benton Gil Jones and Jasper Manuel were aware of the requirements of the FLSA and its corresponding regulations necessary to pay for actual work performed and for overtime pay when employees perform overtime work. Despite this knowledge, Defendant Gourmet Services Inc. and individual Defendants Baker, Benton Gil Jones and Jasper Manuel failed to pay Plaintiff Wells mandatory overtime wages as required by the FLSA. The services performed by Wells were a necessary and integral part of and directly essential to Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel's business. Wells routinely worked overtime hours and was not compensated for those hours worked.

4. Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel were aware Plaintiff Wells was working overtime hours while employed with Gourmet. Wells complained repeatedly of working high numbers of overtime hours to Gourmet Services Inc. and individual Defendants Baker, Benton,

3

Gil Jones and Jasper Manuel. No action was taken by Gourmet and these individual Defendants to pay for overtime hours, determine Wells eligibility for overtime or stop Wells from working overtime.

5. Wells began working for Gourmet Services Inc. on or about June 16, 2011, as an Executive Chef and later Executive Chef /Production Manager at Alabama State University Dining Services, Montgomery, Alabama. Wells worked with Defendant Gourmet Services Inc. until June 10, 2013, when he was terminated. Wells was a full time regular employee with Gourmet Services Inc. At all times during his employment with Gourmet, the Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel controlled all aspects of Wells hiring, job placement, work, job assignments, supervision, discipline, wages, hours scheduled, hours worked, overtime allowed/paid, demotion, termination, and all essential terms and conditions of his daily work.

6. Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel have intentionally failed and/or refused to pay the Plaintiff at overtime rates for work performed according to the provisions of the FLSA. As a result of the Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel's violations of the FLSA, Wells has suffered damages by failing to receive overtime wages in accordance with §207 of the FLSA.

7. During the time of employment, payroll records maintained by Gourmet Services Inc. and produced to Plaintiff state that Wells worked 1407.50 hours of overtime. Gourmet failed to provide regular payroll records required to be maintained by the FLSA for the following: 5/24/12 to 7/4/12, 11/22/12 to 12/05/12, 12/27/12 to 1/2/13, and 2/14/13 to 6/10/13.

8. Plaintiff contend that Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel jointly and severally failed to pay him overtime  pay totaling $63,337.00 ( 1407 hours x $45/hr.) based upon payroll records kept

4

by Defendant Gourmet Services Inc. on Plaintiff's worktime and supplied to Plaintiff.

9. Plaintiff contends the Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel jointly and severally failed to pay him 319.75 hours of overtime totaling $14,388.75 ( 319.75 x $45) for hours worked where no payroll records were maintained by Defendant Gourmet Services Inc. or provided to Plaintiff (i.e. 5 /24/12 to 7/4/12, 11/22/12 to 12/05/12, 12/27/12 to 1/2/13, and 2/14/13 to 6/10/13) based upon the recollection and approximation of Plaintiff.

10. In addition to the amount of unpaid wages owed, Plaintiff is also entitled to recover from Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel jointly and severally  an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b) and prejudgment interest. Gourmet's actions in failing to compensate Wells in violation of the FLSA were willful and Gourmet has not made good faith effort to comply with the FLSA.

11. Plaintiff contends that he is  entitled to $77,725.75 ( $63.337 + $14,388.75) in liquidated damages against Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel jointly and severally  plus prejudgment interest because  Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel willfully violated the FLSA in that Plaintiff constantly complained to individual Defendants Baker, Benton, Gil Jones and Jasper Manuel and other management about the high number of overtime hours he worked and not being paid extra for those hours and Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel never made good faith efforts to pay Plaintiff's overtime or good faith efforts to determine Plaintiff's eligibility for overtime and Defendant Gourmet Services Inc.'s  and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel failed to keep and maintain adequate payroll/time records on the hours worked by Plaintiff.

12. Plaintiff contends that Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel jointly and severally are liable to Plaintiff for payment of the reasonable attorney fees and expenses of Plaintiff's counsel.

13. "The Fair Labor Standards Act was designed to extend the frontiers of social progress by insuring to all able-bodied working men and women a fair day's pay for a fair day's work." *Gregory v. First Title of Am., Inc.,* 555 F.3d 1300, 1307 (11th Cir. 2009) (quoting *A.H. Phillips, Inc.,* 324 U.S. 490, 493 (1945)); 29 U.S.C. §201 et. seq.

14. "There can be no doubt that the purpose of the FLSA was and is to protect interstate employees by denying their employers the tool of toying with workers' wages when battling in the competitive market." *Martinez v. Behring's Bearings Serv., Inc.,* 501 F.2d 104, 107 (5th Cir. 1974).

15. "The [Fair Labor Standards Act] should be interpreted liberally in the [Plaintiffs'] favor." *Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir. 1992); *Mitchell v. Lubin, McGaughy & Assocs.,* 358 U.S. 207, 211 (1959).

16. To accomplish this, 29 U.S.C. § 207 (a) "requires [that] [the employer pay their employees at the enhanced rate of time-and-a-half when their work week exceeds 40 hours," *Cremeens v. City of Montgomery,* 602 F.3d 1224, 1227 (11th Cir. 2010 *Naramore v. City of Jasper*, ---F.Supp.3d. ---, 2014 WL 2875475 @5 (N.D.Ala. June 14, 2014)("An employee is entitled to overtime compensation at a rate that is at least 1.5 times his regular rate of pay.")("An employee's regular rate is always an hourly rate and if an employee is paid on a salaried, as opposed to an hourly, basis, the employer must calculate an hourly rate from the salary.").

17. Individual liability for violations of the FLSA is no longer limited to only corporate officers in the Eleventh Circuit. In *Lamonica v. Safe Hurricane Shutters*,  711 F.3d 1299 (11th Cir. 2013), the Eleventh Circuit Court of Appeals held that any individual with control over an employer's financial affairs or  operations could be held liable for FLSA violations. "(T)he FLSA contemplates at least

6

some individual liability …upon those who "control [] a corporation's financial affairs and can cause the corporation to compensate (or not compensate) employees in accordance with the FLSA."" *Lamonica v. Safe Hurricane Shutters*, 711 F.3d 1299, 1313 (11th Cir 2013) (parenthetical original and added).

18. Plaintiff seeks the payment of back overtime wages for all overtime hours worked including call-ins, liquidated damages, attorney fees, and such other relief as entitled by law in this case.

19. Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel's conduct in failing to properly classify and compensate Plaintiff with overtime as is required by the FLSA was willful. Defendant Gourmet Services Inc. and individual Defendants Baker, Benton Gil Jones and Jasper Manuel knew, or showed reckless disregard for, the fact that their conduct was forbidden by the FLSA. *Ojeda-Sanchez v. Bland Farms, LLC,* 499 Fed. Appx. 897 (11th Cir. 2012); *Morgan v. Family Dollar Stores,* 551 F.3d 1233, 1280 (11th Cir. Ala. 2008)( "Federal regulations define "reckless disregard" as "the failure to make adequate inquiry into whether conduct is in compliance with the [FLSA] ……. 5 C.F.R. § 551.104.").

20. Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel did not act in "good-faith" with respect to the classification and pay practices due to there being no evidence that its failure to compensate Plaintiff was taken in good faith and was in conformity with and in reliance on a written administrative interpretation from the Department of Labor. 29 U.S.C. § 259; *Cole v. Farm Fresh Poultry, Inc.,* 824 F.2d 923, 926-927 (11th Cir. 1987)("an employer's actual reliance upon his own incorrect interpretation of a vague and general administrative guideline will not suffice.").

21. Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel cannot prove both that it acted with good faith belief that its policy and practice of not paying Plaintiffs' overtime compensation was in compliance with the FLSA and the Department of Labors' regulations and that it had

reasonable grounds for its belief. *Ojeda-Sanchez v. Bland Farms, LLC,* 499 Fed. Appx. 897 (11th Cir. 2012) (citing *Rodriguez v. Farms Stores Grocery, Inc.,* 518 F.3d 1259, 1272 (11th Cir. 2008).

22. Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel have violated the FLSA's recording keeping requirement set out in 29 U.S.C. § 211 (c) and 29 C.F.R. § 516.2. See allegations pro se Amended Complaint Doc. 47 pages 10-14.

23. Defendant Gourmet Services Inc. has a duty and is required to make, keep, and preserve records of Plaintiff's wages, hours, and other conditions and practices of employment since "[it] is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed by Plaintiff." *Allen v. Bd. of Pub. Educ. For Bibb Cnty.,* 495 F.3d 1306, 1315 (11th Cir. 2007) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)).

24. To be in compliance with the Department of Labor's record keeping provision, Gourmet must maintain and preserve records indicating among other things, (1) the time of day of week on which Plaintiff's workweek begins: (2) Plaintiff's regular hourly rate of pay for any workweek in which overtime compensation is due; (3) the hours worked each workday and total hours worked each workweek by Plaintiffs; (4) the total daily or weekly straight-time earnings or wages due for hours Plaintiff's worked during the workday or workweek, exclusive of premium overtime compensation; and (5) the total premium pay for overtime hours 29 C.F.R. § 516.2(a)(1)-(12).

25. Plaintiff contends that his claim for hours worked where there are no records is a separate claim independent of the overtime pay claim. Plaintiff contends that Defendant Gourmet Service Inc. is required by the FLSA to maintain adequate payroll records of employee worktime. The FLSA requires that covered employers "make, keep and preserve such records of the person employed by him of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 2111(c). "Failure to

keep appropriate records constitute an independent violation of the FLSA." *Perez v. ZL Restaurant Corp.,* --- F.Supp.3d---, 2014 WL 7717614 *8 (D.N.M. Dec. 30, 2014); See U.S.C. § 215; See also *Solis v. SCA Corp.*, 938 F.Supp.2d 380, 398 (E.N.Y. 2013)( noting that maintaining inadequate records "constituted a *per se* violation of the Act."); *Ziegler v. Tower Communities, LLC.,* --- F.Supp.3d ---, 2015 WL 1208643 @15 (N.D.Ala. March 16, 2015)("this court finds that the Ziegler's are entitled to summary judgment in their favor as to the FLSA record-keeping claim").

26. Defendant Gourmet Services Inc. and individual Defendants Baker, Benton, Gil Jones and Jasper Manuel  have violated the Department of Labor's record keeping requirements due to the fact they have failed to maintain a record indicating the hours Plaintiffs worked each workday, the total hours worked each week and Plaintiff's regular rate of pay. *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1257 (11th Cir. 2001) (an employer is "obligated to maintain records of the '[h]ours worked each workday and total hours worked each workweek'.")

27. The legal consequence of Defendant Gourmet Services Inc.'s and individual Defendants failure to create and maintain legally required records is that a separate award of damages to Plaintiff independent of any overtime pay claim can be rendered, even though the result might only be "approximate." *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 471 (11th Cir. 1982); *Lyless v. Burt's Butcher Shoppe & Eatery, Inc.,* 2011 U. S. Dist. LEXIS 119286, *16-17 (M.D. Ga. Oct. 17, 2011).

28. Plaintiff has proven that they performed therefore Gourmet must "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the Plaintiffs' testimony. In the event Gourmet fails to do so, damages may be still be awarded Plaintiff even though said damages are only approximate." *Contreras v. Lara's Trucks, Inc.,* ---F.Supp.2d---, 2013 WL 163648 @3 (N.D. Ga. Jan. 11, 2013).

29. Plaintiff contests any defense or position contained in contentions of Defendants Gourmet Services Inc. and individual Defendants Benton, Baker, Gil Jones and Jasper Manuel in this Pretrial Order or in other parts of this Order that were not timely or properly raised by Gourmet and individual Defendants in their Answers and/or at the appropriate stage of this case prior to entry of this Order. Plaintiff does not consent to the enlargement of any defense or contention by the Defendant Gourmet Services Inc. and individual Defendants Baker, Benton Gil Jones and Jasper Manuel that was not previously raised or properly preserved.

Defendant:

1. That Plaintiff was at all times an exempt employee "employed in a bona fie executive, administrative, or professional capacity" pursuant to 29 U.S.C.A. § 213(a)(1) and is therefore exempt from the consideration of overtime under the FLSA.

2. The Plaintiff is an Executive Chef and is therefore subject to the "learned exemption" pursuant to 29 C.F.R. §301(e)(6) and is therefore exempt from consideration for overtime under the FLSA. See 29 U.S.C.A. § 213(a)(1).

3. The Plaintiff acted in a managerial capacity in his position as Executive Chef for the duration of his employment with Gourmet Services, Inc. The Plaintiff was the head chef in charge of the daily presentation of food at the dining hall and cafeteria located at the Alabama State University. The Plaintiff was also responsible for catering special events and programs separate from his duties as an Executive Chef at the cafeteria. Therefore the Plaintiff was not a menial employee engaged in ministerial tasks pursuant to 29 C.F.R. §301(e)(6). See 29 U.S.C.A. § 213(a)(1).

4. The Plaintiff further acted in a managerial capacity in that he was included in the hiring and firing processes, Plaintiff had a staff of no less than 25 employees that answered to him, and Plaintiff gave direction to members of the staff in the execution of his duties as

10

Executive Chef. Therefore the Plaintiff was not a menial employee engaged in ministerial tasks pursuant to 29 C.F.R. §301(e)(6). See 29 U.S.C.A. § 213(a)(1).

5. The Plaintiff regularly took part in the meetings with the managers composed of Al Baker, Jasper Manuel, and the Plaintiff. The Plaintiff acted with autonomy as it related to the performance of his duties as Executive Chef. The Plaintiff answered only to Al Baker during the performance of his duties as an Executive Chef. Therefore the Plaintiff was not a menial employee engaged in ministerial tasks pursuant to 29 C.F.R. §301(e)(6). See 29 U.S.C.A. § 213(a)(1).

6. The Plaintiff studied at the Food and Maritime Trade School in New York, New York for several years and has held himself out, publicly, to be an Executive Chef based on such study of the culinary arts. (Doc. 1-2 p.3).

7. The Plaintiff was hired as an Executive Chef, as is demonstrated by the Plaintiff's Offer Letter with Gourmet Services, Inc. The Plaintiff was correspondingly paid a salary as an exempt employee pursuant to 29 C.F.R. §541.602. Plaintiff was further paid a salary on a weekly basis of at least $455.00 per week pursuant to 29 C.F.R. 541.301 and is accordingly exempt from consideration of overtime pursuant to the FLSA. Watkins v. City of Montgomery, 919 F.Supp. 1254, 1260 (M.D. Ala. 2013) ("An employee falls within the administrative exemption if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) his "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §541.200(a).")

8. The duties of the Plaintiff with his employment as an Executive Chef for Gourmet Services, Inc. correspond exactly to the duties of an executive chef as detailed by the United States Department of Labor in its Occupational Handbook. ("Executive chefs, head cooks, and chefs de cuisine are primarily responsible for

11

overseeing the operation of a kitchen. They coordinate the work of sous chefs and other cooks, who prepare most of the meals. Executive chefs also have many duties beyond the kitchen. They design the menu, review food and beverage purchases, and often train cooks and other food preparation workers. Some executive chefs primarily handle administrative tasks and may spend less time in the kitchen.") Department of Labor Handbook; Executive Chefs.

9.  The Plaintiff in acting as an Executive Chef is an exempt employee in that the employer, Gourmet Services, Inc. has satisfied the four pronged test considered by this Court in determining whether employees are exempt pursuant to the FLSA. Those prongs are 1) the salary test, 2) the primary duties of the employee relate to management of the enterprise, and 3) the employee directs at least two employees in the course of the exercise of his duties, and 4) the suggestions of the employee related to hiring and firing are given sufficient weight. 29 C.F.R. §541.200(a); Watkins v. City of Montgomery, 919 F.Supp.2d 1254, 1260 (M.D. Ala. 2013).

10. The Plaintiff spent more than half of the time in the performance of his duties in a management role in that he oversaw the presentation and delivery of the food items in that he checked the freshness of the food and ingredients, supervised the activities of cooks and other food preparation workers, developed recipes and determined how to present the food, planned menus and ensured uniform serving sizes and quality of meals, inspected supplies, equipment, and work areas for cleanliness and functionality; hired, train, and supervise cooks and other food preparation workers, ordered and maintain inventory of food and supplies, and monitored sanitation practices and follow kitchen safety standards. Therefore when considered as a whole, the Plaintiff's primary job duties are included within the exemption provided for Executive Chefs as learned professionals. 29 C.F.R. §541.700(a); see also *Barreto v. Davie Marketplace, LLC,* 331 Fed.Appx. 672 (11th Cir.2009) (applying this principle).

11. The Plaintiff's contentions that he is owed overtime pay pursuant of the FLSA are false based on the evidence and that further the Defendants were under no obligation to maintain any records regarding hourly wages related to the Plaintiff as an exempt employee.

12. The Plaintiff in this Pre-Trial Order makes or attempts to make contentions that expand beyond the Plaintiff's Complaint and attempt to place facts in evidence improperly. Such contentions must therefore be stricken and not considered by this Court or the Jury. Such contentions relate specifically to the duty to maintain records related to the Plaintiff's hourly wages.

13. The Defendant similarly contests any position contained within the contentions of Plaintiff that were not properly or timely raised.

5.     <u>STIPULATIONS BY AND BETWEEN THE PARTIES:</u>

1. An April13, 2011 employment letter was signed by and Defendant Gourmet Services Inc. and Plaintiff Lawrence Wells employing Wells as an Executive Chef at an annual salary of $62,500.

2. Plaintiff Wells worked for Defendant Gourmet Services Inc. with the job titles of Executive Chef and later Executive Chef/Production Manager at Alabama State University Dining Services, Montgomery, Alabama from June 16, 2011 through June 10, 2013.

3. June 13, 2013 letter from Gourmet to Wells terminated his services effective June 13, 2013.

4. Defendant Al Baker is and was Vice President of Defendant Gourmet Services Inc during all times relevant to this case.

5. Defendant Tia Benton is and was Human Resources Director of Defendant Gourmet Services Inc. during all times relevant to this case.

6. Defendant Gil Jones is and was Chief of Operations of Defendant Gourmet Services Inc. during all times relevant to this case.

7. Defendant Jasper Manuel is and was Regional Director of Defendant Gourmet Services Inc. during at all times relevant to this case.

[SIGNATURE PAGE FOLLOWS]

**IT IS HEREBY ORDERED** that the above constitutes the Pretrial Order for the above captioned case (____) submitted by stipulation of the parties or (____) approved by the court after conference with the parties.

      **IT IS FURTHER ORDERED** that the foregoing, including the attachments thereto, constitutes the Pretrial Order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this Pretrial Order shall not be amended except by order of the Court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the Pretrial Order after the Pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

      **IT IS SO ORDERED** this ____ day of _____, 20____.

_____

THE HONORABLE KEITH WATKINS,
JUDGE, UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

14

MONTGOMERY DIVISION

Respectfully submitted this ___ day of June, 2015.

  /s/ James E. Long                           /s/ Odis Williams
James E. Long, Esq.                    Odis Williams, Esq.
Georgia Bar No. 408979                 Georgia Bar No. 556272
The Law Office of James E. Long        The Law Office of Odis Williams, P.C.
105 S. McDonough Street                1640 Powers Ferry Road
Atlanta, GA 30308                      Building 20, Suite 300
(334) 262-7850 *Telephone*             Marietta, GA 30067
Email: jameslong4006@gmail.com         (770) 575-4466 *Telephone*
*Counsel for Plaintiff*                (877) 329-8359  *Facsimile*
                                       *Email: owilliams@odiswilliamspc.com*
                                       *Counsel for Defendants*
                                       *Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of Joint Proposed Pretrial Hearing Order on

counsel for Defendants using the electronic Pacer system and/or by placing copies thereof in the

United States Mail, First Class postage prepaid, on this the 22nd day of June 2015 addressed as

follows:

Odis Williams

Law Office of Odis Williams, P.C.

1718 Peachtree Street

South Tower Suite 265

15

Atlanta, GA  30309

owilliams@odiswilliamsspc.com

/s/ James E. Long.
James E. Long-LON016