IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LAWRENCE WELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CASE NO. 2:13-CV-516-WKW |
| | )  (WO) |
| GOURMET SERVICES, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Before the court is Defendants' motion for summary judgment. (Doc. # 140.) Upon consideration of the motion, the court concludes that the motion is due to be denied.

### I.   JURISDICTION AND VENUE

The court has subject-matter jurisdiction over Plaintiff's federal-law claims pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested.

### II.   STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials . . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III.    DISCUSSION

### A.    Defendants Are Not Entitled to Summary Judgment on Wells's FLSA Overtime Claims.

Wells alleges that Defendants violated the FLSA by hiring him for a position that was designated as an executive or management position, but effectively using him as a nonmanagerial, nonexecutive food production worker and requiring him to work in excess of forty hours per week without overtime pay. On summary judgment, Defendants argue that Wells is exempt from the FLSA under the executive and administrative employee exclusions provided by 29 U.S.C. § 213(a)(1). *See* 29 C.F.R. § 541.100(2) (providing that, as a general rule, to meet the executive employee exemption, an employee must be one who is "[c]ompensated on a salary basis at a rate of not less than $455 per week";[1] "[w]hose primary duty is management of the enterprise or a subdivision or department" of the enterprise; "[w]ho customarily and regularly directs the work of two or more other employees; and [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."); 29 C.F.R. § 541.200(2) (providing that, as a general rule, to meet the administrative employee exemption, the employee must be one

---

[1] It is undisputed that Wells meets the minimum salary requirements of the executive and administrative employee exemptions.

3

who is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer"; and "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."); 29 C.F.R. § 541.700(a) (providing that, for determining whether an employee's primary duty consists of exempt work, the relevant factors include, but are not limited to, "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee").

In support of the summary judgment motion, Defendants flatly misrepresented numerous portions of Wells's deposition testimony. For example, Defendants cite portions of Wells's deposition for the proposition that, as a matter of "undisputed fact", "Wells was a manager at Gourmet Services" and "[h]e managed about 45 employees." (Doc. # 140 at 4.) The cited portions of Wells's deposition in no way support Defendants' statement. If anything, taken at face value, the cited portions of Wells's deposition reinforce his allegation that he was a manager in name only, but not in fact. (Doc. # 142-1 at 83 lines 9-16 (Wells

referring to himself as a "so-called manager" who took part in conference calls that were not attended by hourly workers); Doc. # 142-1 at 104 line 22, through 105 line 6 (Gourmet Services' lawyer reading aloud an email written by Wells in which he complains that, although he was supposed to be a manager, his supervisor at Gourmet Services was "working [him] like an hourly employee," micromanaging his work and allowing him no discretion, "overrunning" him in the kitchen, "running the kitchen" instead of him, and "working [him] like a dog"); Doc. # 142-1 at 19 (Wells's testimony that he manages "about 45 employees" *at his current job in Dubai, United Arab Emirates*)).

Defendants have also been less than candid about other cited portions of Wells's deposition. For example, Defendants also represent that another portion of Wells's testimony establishes as "undisputed fact" that Wells "enforced staff schedules" and reported to his superiors when those schedules were not being followed. The cited deposition testimony, however, includes statements that Wells (1) "didn't have any authority" to discipline staff or enforce schedules; (2) that "management" (excluding Wells) had "all executive power," including the power to discipline employees; (3) that all discipline Wells thought necessary had to "go through management" and that he had to "get management to talk to" errant staff; and (4) that "nothing was done" regarding his disciplinary complaints to "management" about staff not following work schedules. (Doc. # 142-1 at 158–

59.) Out of context, portions of the cited deposition testimony could be interpreted as a suggesting that Wells had the authority to manage employees, enforce staff schedules, and maintain discipline by reporting matters to his superiors, but, contrary to Defendants' representations, Wells's testimony does not establish the matter as an undisputed fact.

Defendants represent as a matter of "undisputed fact" that a portion of Wells's testimony establishes that he "frequently made suggestions to management regarding the operation of the business" (Doc. # 140 at 5), but Defendants fail to mention that, in the same cited testimony, Wells stated that his emails were "just suggestions" that his employer "never did anything" about and "never responded to." (Doc. # 142-1 at 170.)  Defendants cite another portion of Wells's deposition testimony for the proposition that "Wells made suggestions to the weekly operation reports" (Doc. # 140 at 5), but the cited portion of Wells's deposition does not support that proposition.  (Doc. # 142-1 at 163–66 (Wells's testimony that he used data from readily available weekly operations reports to create a handwritten spreadsheet that he used to make suggestions, and that he does not remember what suggestions he made on the basis of his spreadsheet); *see also* Doc. # 142-1 at 97 (Wells's explanation that weekly operations reports were financial "reports that c[a]me down from Al Baker and the company").)

Defendants represent that another portion of Wells's deposition establishes as an undisputed fact that he "was responsible for the purchasing, receiving, and storing of food products and maintaining budget control, inventory, and food costs." (Doc. # 140 at 5.) However, in the cited deposition testimony, Wells testified that he did not remember the purpose of a certain handwritten ledger that catalogued sales and costs, but that he would have used the ledger to make "suggestions." (Doc. # 142-1 at 163–65.) The ledger itself (Doc. # 140-1 at 22–24) does not indicate whether Wells was responsible for purchasing, receiving, or storing food products or controlling budget, inventory, or costs. In fact, in another portion of Wells's deposition Defendants cite for the proposition that he was responsible for those matters, Wells actually testified that other Gourmet Services managers were primarily responsible for them. (Doc. # 142-1 at 177–79 (Wells's testimony regarding the identity of employees who were primarily responsible for keeping track of inventory and deciding how much food to buy).)

Defendants also represent that, as a matter of "undisputed fact" (Doc. # 140 at 3–5), Wells was responsible for ensuring that the production staff was in strict compliance in all areas concerning food production; for ensuring that that food was produced in compliance with standardized menus and recipe cards; and for training staff and showing them how to prepare recipes. In support of these "undisputed facts," Defendants cite Wells's resumé, in which Wells stated that those duties

7

were part of his responsibilities in his job at Gourmet Services. (Doc. # 140-1 at 2.) However, that Wells performed those duties at Gourmet Services is not an "undisputed fact." As Defendants fail to mention, Wells testified under oath at his deposition that, on his resumé, he "lied" and "exaggerated" his responsibilities at Gourmet Services because he had to do whatever it took to get another job, and that he did not actually perform those duties. (Doc. # 142-1 at 46–62.)

Aside from the misrepresented portions of the record,[2] Defendants have presented substantial, but controverted, evidence that Wells was employed in a capacity that qualified for the FLSA's administrative or executive FLSA exemptions. (Doc. # 140-1 at 2; Doc. # 140-2; Doc. # 140-3.) However, on summary judgment, it is not for the court to determine the credibility of Wells's testimony or to weigh conflicting evidence. *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for

---

[2] The court does not find it necessary to point out every misrepresentation in Defendants' brief. ***Counsel for all parties are admonished that, in the future, they shall comply fully with the letter and spirit of Rule 11 of the Federal Rules of Civil Procedure. Mere admonishment is generally reserved for first-time offenders, and, as of this writing, counsel for both sides have been admonished once for overt material misrepresentation to this court.*** (*See* February 10, 2016 Order, Doc. # 143 at 3 ("In response to the motion in limine, Plaintiff's counsel, James E. Long, affirmatively misrepresented to the court that he emailed the expert report to Defendants on February 27, 2015, in preparation for mediation, and that he also gave Defendants a copy of the report at the mediation on March 2, 2015. . . . [The] Rule 26 expert report is very clearly dated June 4, 2015.").)

summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Taken in context and viewed in the light most favorable to Wells, the evidence reasonably supports Wells's contention that, regardless of his official job description, his primary duties did not involve management or "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.100(2); 29 C.F.R. § 541.200(2). Specifically, Wells's testimony reasonably supports his contention that, in practice, his employer utilized him as a food production worker and actively undermined, overrode, ignored, or otherwise effectively prevented all but a few attempts on his part to exercise discretion, supervise kitchen staff, or perform other management or business operations tasks for which, on paper, he may have been responsible. *See* 29 C.F.R. § 541.102 (defining "management" in the context of the executive exemption); 29 C.F.R. §541.201(a) (providing that, to qualify for the administrative exemption, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."); *see also* 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or

nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."); 29 C.F.R. § 541.700(a) ("To qualify for exemption under this part, an employee's 'primary duty' must be the performance of exempt work. . . . Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.").

Because a genuine dispute of material fact exists as to whether Wells primarily worked in a managerial or executive capacity, summary judgment is due to be denied on Wells's FLSA overtime claim.

**B.** **To the Extent that Wells's Complaint Can Be Construed as Asserting a Claim for Violating FLSA's Recordkeeping Requirements, Defendants Are Entitled to Summary Judgment on Wells's Recordkeeping Claim; However, Wells is Entitled to Assert a Separate FLSA Overtime Claim for Periods in Which Defendants Failed to Keep Records of His Hours.**

Wells alleges that Defendants failed to keep overtime records during certain periods of time, thus precluding him from proving the precise amount of overtime pay he is due for those time periods. (*See* Doc. # 143 at 15–16, 19–20; Doc. # 158 at 49.) Defendants seek summary judgment on this "claim" on grounds that the

FLSA does not create a cause of action for violating its recordkeeping requirements.[3]

An employee asserting an FLSA overtime claim bears the burden of proving that he or she worked overtime without compensation and the extent of overtime owed. *See Allen*, 495 F.3d at 1315. However, under the FLSA, the employer is required to make and preserve overtime records. *Id.*; 29 U.S.C. § 211(c). Generally, employees do not keep separate records of all their overtime hours. *Allen*, 495 F.3d at 1315. Thus, "[t]he employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed." *Id.*

If an employer violates its FLSA recordkeeping duties and the employee is unable to produce adequate substitutes for the employer's overtime records, the employee will not be penalized for his or her failure to establish the exact amount of overtime wages to which he or she is entitled. *Id.* Instead, when the employee is unable to carry his or her burden to establish the precise amount of overtime pay owed because the employer violated the FLSA's recordkeeping requirements, the

---

[3] In their reply brief, Defendants also argue that they were not obligated to keep records of Wells's hours and overtime because they had a good faith belief that Wells was an exempt employee. The court will not consider this argument because it was raised for the first time in a reply brief, because it is not adequately supported by citation to controlling legal authority, and because there exists a genuine dispute of material fact as to whether Defendants could have reasonably and in good faith believed that Wells was exempt. Moreover, under the FLSA, although good faith is a defense to payment of liquidated damages, "unpaid wages must be awarded regardless of the employer's good faith." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1307 n.7 (11th Cir. 2013).

employee need only (1) establish that he or she performed overtime work that was not properly compensated and (2) produce evidence sufficient to show the amount and extent of the improperly compensated work as a matter of just and reasonable inference. *Id*. at 1316. If the employee meets those two requirements, the burden then shifts to the employer to either produce evidence of the exact amount of work performed, or to produce evidence that negates the reasonableness of the inference to be drawn from the employee's evidence. *Id*.

Thus, while Defendants are correct that Wells does not have a separate cause of action for violation of the FLSA's overtime recordkeeping requirements, Wells is entitled to assert an FLSA claim for unpaid overtime for which Defendants failed to keep adequate records. *Allen*, 495 F.3d at 1316; *Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 471 (11th Cir. 1982). Wells is not currently pursuing a claim for a violation of FLSA's recordkeeping requirements *per se*; he is simply pursuing an FLSA overtime claim for work performed during certain periods for which Defendants did not keep records, which is permissible. At trial, Wells will be permitted to pursue an FLSA overtime claim for periods in which records were kept and an FLSA overtime claim for periods in which they were not, and the parties' relative burdens of proof and production will be apportioned appropriately with respect to each of those claims.

However, to the extent that Wells's *pro se* complaint could be construed as containing a separate claim against Defendants that is not an overtime claim, but that is solely a claim seeking damages for violating FLSA's overtime recordkeeping requirements, summary judgment is due to be granted. No such private right of action exists, and, in any event, Wells has since abandoned that claim. *See Rossi v. Associated Limousine Servs., Inc.*, 438 F. Supp. 2d 1354, 1366 (S.D. Fla. 2006) (providing citations and explanation regarding the lack of a private right of action to enforce FLSA's recordkeeping requirements).

C. **The Individual Defendants Are Not Entitled to Summary Judgment on Grounds That They Are Not "Employers" Within the Meaning of the FLSA.**

Liability under the FLSA for failure to pay overtime is limited to "employers." 29 U.S.C.A. § 207(a)(1). The FLSA "defines the term 'employer' broadly to include both the employer for whom the employee directly works as well as any person acting directly or indirectly in the interests of an employer in relation to an employee." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (internal citations and quotation marks omitted); *see also* 29 U.S.C. § 203(d) (defining "employer"). Under this broad definition, any supervisor or "corporate officer with operational control of a [employer]'s covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Lamonica*, 711 F.3d at 1309 (quoting *Patel v.*

13

*Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986)).  Corporate officers, as well as supervisors who are not officers, qualify as employers under the FLSA if they exercise sufficient operational control over the employer's financial affairs, can cause the company to comply (or fail to comply) with the FLSA, and either are involved in the employer's day-to-day operations or have some direct responsibility for the supervision of the employee.  *Id.* at 1309, 1313.

Defendants Al Baker, Tia Benton, Gil Jones, Jasper Manual, and Charles Jones argue that they are entitled to summary judgment because they were not Wells's "employer" within the meaning of the FLSA.  In support of this contention, they cite Wells's deposition testimony.  In the cited testimony, however, Wells stated that he did not know whether the individual Defendants (other than Tia Benton)[4] are employers for FLSA purposes; that the matter is "for the judge to decide;" and that the individual defendants "were all part of the management."  (Doc. # 142-1 at 301-304.)  The cited deposition testimony does not establish that the individual defendants are entitled to summary judgment on grounds that they were not Wells's "employer" as defined by the FLSA.  On this record, the court concludes that any dispositive action as to individual Defendants should be considered after all the evidence is produced at trial.

---

[4] Wells testified that he was suing Tia Baker is an individual and that she was not his "employer." (Doc # 142-1 at 302.) However, in the same portion of his deposition, he stated that he was suing Tia Benton because she was responsible for human resources. The court notes that Wells is not a lawyer and that he has submitted evidence that supports his contention that Tia Baker was an "employer" within the meaning of the FLSA.

14

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendants' motion for summary judgment (Doc. # 140) is DENIED.

DONE this 23rd day of May, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
